**EDGEWATER BEACH CORPORATION v. JOSEPH SUGARMAN**

15 So. (2nd) 260          June Term, 1943
October 8, 1943          Division B
Rehearing Denied October 29, 1943

*Stanley C. Myers,* for appellant.

*Alfred E. Raia,* for appellee.

THOMAS, J.:

The declaration in an action to recover damages for breach of contract contained no fewer than nine references to a *written* instrument. The correspondence made a part of the pleading and relied upon to establish the agreement was exchanged between the plaintiff, now appellee, and the defendant, now appellant, in respect to employment of the former to manage the hotel of the latter during the 1939-1940 season. Appellant maintains that the letters and telegrams pleaded were not sufficient in themselves to show a definite understanding; hence there was a variance between the pleading of a written agreement and the proof of one partly written and partly oral.

To decide this point we will, for the moment, confine our study to the declaration and the exhibits.

Appellee wrote to the president of appellant, with regard to the employment: "I will accept 10% of the gross receipts of the Hotel with a minimum guarantee of $3000.00. Or, I will accept 12% of the gross receipts derived from the hotel without a minimum guarantee. In any event I am to draw $50.00 a week, to be charged against my percentage." Five days later he became impatient and telegraphed the addressee that he "must have telegraphic reply today our proposition for winter. . ." The same day he received an acknowledgment and answer: "Your wire date. Have written you fully yesterday. Your proposition entirely acceptable consider our deal closed. . ." The letter contained the significant statement: "I notice that you make a counter proposition which constitutes two propositions either of them is alright and fair enough therefore you may consider our arrangements closed and upon my return [from Los Angeles to Miami] you and I will talk matters over and which one of the propositions will work out better to our mutual satisfaction thats the one we will work out in reality there can't be a great deal of difference. Your drawing account of $50.00 a week, that is perfectly alright."

All this occurred the last week of October, on the eve of the tourist season.

Appellant, relying upon the principle that an acceptance, in order to cap an offer and form a contract, must be absolute and unconditional, asserts that the letter from which we have quoted demonstrated that there was no acceptance by the corporation bearing these qualities. It is charged that the replies of the president of the corporation were an acceptance on condition that one of the alternative methods of compensation would be agreed upon when the parties eventually met; hence, no valid agreement was reached by writings. The communications are dubbed mere negotiations.

A study of them does not lead us to the conclusion that they may be considered so lightly or that the excerpts we have given evince such vagueness that there cannot have been a meeting of the minds of the parties. In simple words the first of them contained an offer to manage a hotel during a season for either 12% of the gross receipts or 10% and a guaranteed minimum of $3000. Appellee was offeror; appellant, offeree. The latter replied by letter that either was acceptable and later, by wire, that the former should "consider the deal closed." This language, it seems to us, refutes the construction that the correspondence amounted to nothing more than negotiations preliminary to a contract ultimately to be executed.

It is our view, rather, that the transaction falls in the class of contracts where the promisee is given an option exercise of which fixes the promisor's obligation.

There could have been no "objectionable indefiniteness . . . since a means [was] provided (the promisee's election) for determining the precise thing which the promisor [was] to do." Williston on Contracts, Revised Ed., Vol. 1 page 129. As we have said, the appellee was the promisor. He proposed to manage the hotel on either of the methods of compensation he outlined, leaving to his prospective employer the choice, or option. By the authority we have cited uncertainty which may well vitiate a contract where the option reposes in the promisor is not as likely to invalidate an agreement where the choice is given the promisee.

When the promisee expressed satisfaction with either or both of the proposals and the promisor entered upon his duties, the former was in no position successfully to defeat recovery by the latter for breach of the contract on the ground that none, in fact, had been entered.

From the brief statement we will give of the facts developed at the trial it will be readily seen that no harm could have been suffered from the circumstance that the offer was made in the alternative and no choice was indicated by appellant in the correspondence.

Appellee was, when the letters and telegrams were exchanged, operating the hotel. It was then fall and he was eager to obtain employment for the impending winter season, the profitable time of year in Miami for those engaged in the hotel business. Other opportunities were offered him and he did not wish to reject them until he knew his place with appellant was secure.

When the president of appellant corporation advised him to consider the "deal closed" he naturally discontinued any efforts to find a place elsewhere. The evidence disclosed that the arrangement more favorable to appellant was eventually adopted, that is, the payment to appellee of ten per cent of gross receipts *without* a guaranty. The lesser amount was claimed in the action.

There is dispute about the manner in which the employment was terminated, one party insisting that appellee resigned, the other that he was discharged. We will say only that there was ample evidence to support the verdict that his services were ended by the appellant.

So far we have ignored an item claimed by appellee for the value of a list of guests furnished by him. Appellant complains that a charge on the subject was inconsistent with a ruling in the progress of the trial striking all testimony with reference to it. We mention it now merely to avoid the criticism that it may have been overlooked, but we conclude that the verdict and judgment clearly indicate that recovery was allowed for wages irrespective of the list and that there is no need to pass upon the propriety of the charge or the validity of this phase of the claim.

Our conclusion: No harmful error has appeared and the judgment should be—

Affirmed.

BUFORD, C. J., BROWN and SEBRING, JJ., concur.