# Third District Court of Appeal

## State of Florida

Opinion filed April 13, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-0470
Lower Tribunal No. 20-17924
_____

**District Board of Trustees of Miami Dade College,**
Appellant,

vs.

**Fernando Verdini,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Kozyak Tropin & Throckmorton LLP, and Javier A. Lopez, Dwayne A. Robinson, Michael R. Lorigas, and Eric S. Kay; Javier A. Ley-Soto, General Counsel, for appellant.

The Moskowitz Law Firm, PLLC, and Adam Moskowitz, Howard M. Bushman, and Adam A. Schwartzbaum, for appellee.

Boyd & Jenerette, P.A., and Kansas R. Gooden; Sniffen & Spellman, P.A., and Robert J. Sniffen and Jeffrey D. Slanker (Tallahassee), for the Florida Defense Lawyers Association, as amicus curiae.

Matthew H. Mears (Tallahassee); Eversheds Sutherland (US) LLP, and Rocco E. Testani and Stacey M. Mohr (Atlanta, GA); Isicoff Ragatz, and Eric D. Isicoff; Lacey D. Hofmeyer (Fort Lauderdale); B. Shannon Saunders, P.A., and B. Shannon Saunders (Marianna); Brian Babb (Daytona Beach); Carl J. Coleman (Fort Myers); Gilligan, Gooding, Batsel, Anderson & Phelan, P.A., and Robert W. Batsel, Jr. (Ocala); Michael A. Richey (Melbourne); Romualdo C. Marquinez, Jr. (Jacksonville); Derrick Bennett, P.A., and Derrick Bennett (Panama City Beach); Neill Griffin Marquis, PLLC, and Richard V. Neill, Jr. (Fort Pierce); Sniffen & Spellman, P.A., and Robert J. Sniffen (Tallahassee); Martha Kaye Koehler (Tampa); Law Office of Anita Geraci-Carver, P.A., and Anita Geraci-Carver (Clermont); Hand Arendale Harrison Sale, and Hayward Dykes, Jr. (Destin); Kevin Fernander (Lake Worth); Boswell & Dunlap, LLP, and Donald H. Wilson (Bartow); J. Paul Carland, II (Sanford); Thomas J. Gilliam, Jr. (Pensacola); Patti Locascio (Gainesville); Karlson Law Group, P.A., and Pamela T. Karlson (Lake Placid); Melissa C. Miller (Palatka); Steven W. Prouty (Bradenton); William J. Mullowney (Orlando); Suzanne L. Gardner (St. Petersburg); Andrews, Crabtree, Knox & Longfellow, LLP, and J. Craig Knox (Tallahassee), for the Florida State Board of Education, the Commissioner of the Florida Department of Education, and 36 Florida Public Colleges and Universities, as amici curiae.

Robert B. Shillinger, Jr., Monroe County Attorney, and Cynthia L. Hall and Peter H. Morris, Assistant County Attorneys; Steven T. Williams, City Attorney; Vernis & Bowling of the Florida Keys, and Dirk M. Smits and Gaelan P. Jones; Roget V. Bryan; Shawn D. Smith, Key West City Attorney, and Nathalia Mellies, Assistant City Attorney, for Monroe County, Florida, and the Cities of Key West, Marathon, Key Colony Beach, Layton, and the Village of Islamorada, Florida, as amici curiae.

Holland & Knight LLP, and Frances G. De La Guardia; Miriam Soler Ramos, City Attorney, for the City of Coral Gables, as amicus curiae.

Varnell & Warwick, P.A., and Janet R. Varnell (Tampa), for the National Association of Consumer Advocates, as amicus curiae.


Before EMAS, LINDSEY, and GORDO, JJ.

LINDSEY, J.

2

Appellant (Defendant below) District Board of Trustees of Miami Dade College ("MDC") appeals from a non-final order denying its motion to dismiss based on sovereign immunity, a doctrine that prohibits suit in the absence of an express contract.[1]  Because Appellee (Plaintiff below) Fernando Verdini has not alleged breach of an express, written contract to provide on-campus or in-person services sufficient to overcome sovereign immunity, we reverse.

## I.    BACKGROUND

This is a putative class action for breach of contract stemming from the transition from on-campus instruction to remote instruction at MDC due to the COVID-19 pandemic.  In March 2020, the Florida Department of Education ordered all public institutions of higher learning to close in response to the pandemic.[2]  MDC transitioned to remote learning during part of the Spring 2020 semester and the entire Summer 2020 semester.

Verdini, who was enrolled as a nursing student during the Spring and Summer 2020 semesters, filed a class action Complaint against MDC

---

[1] This Court has jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(F)(iii), which authorizes appeals from non-final orders that deny motions asserting entitlement to sovereign immunity.

[2] Fla. Dep't of Educ., <u>Florida Department of Education Announces Guidance for 2019-20 School Year</u> (Mar. 17, 2020), http://www.fldoe.org/newsroom/latest-news/florida-department-of-education-announces-additional-guidance-for-the-2019-20-school-year.stml.

3

(through its Board of Trustees) alleging breach of contract.[3]  Verdini alleges he paid certain mandatory fees[4] for on-campus services pursuant to express, written contracts with MDC, and MDC breached when it failed to provide the on-campus services for which the fees were intended.  The Complaint lists five mandatory fees, charged on a per credit hour basis:

Student Services: $8.28
Financial Aid: $4.14
Capital Improvement: $15.88
Technology: $4.14
Parking: $3.00

The Complaint alleges that the express, written contracts are constituted by bills, invoices, and other written agreements.  The Complaint includes two exhibits: (A) Verdini's Spring and Summer 2020 invoices and (B) a Financial Obligation Agreement.  Verdini further alleges he does not have all the documents constituting the express contracts, but he asserts he

---

[3] The Complaint also included a claim for unjust enrichment.  The order on appeal dismissed the unjust enrichment claim with prejudice because this remedy only applies in the absence of an express contract, and, as the trial court's order correctly noted, "Florida law does not permit a waiver of sovereign immunity based on implied contracts."  Verdini has not cross-appealed this dismissal, so only the remaining breach of contract claim is at issue in this appeal.

[4] According to the Complaint, Verdini's "claims relate solely to fees for on-campus services that are not available to students with campuses effectively shut down. Plaintiff's claims do not concern tuition costs."

4

should be given the opportunity to establish these unidentified documents by way of discovery.

MDC moved to dismiss, arguing that as a public college it is protected by sovereign immunity; therefore, Verdini is required to establish waiver by identifying an express, written contract requiring MDC to provide on-campus services. In response, Verdini maintained that "the Complaint attaches the express agreement that Plaintiff entered into with MDC in which Plaintiff agreed to pay all fees in exchange for specifically enumerated services." Verdini again pointed to the invoices and the Financial Obligation Agreement attached to the Complaint. Additionally, though not alleged in the Complaint, Verdini's response relied heavily on the payment of laboratory fees.[5]

Following a virtual hearing, the lower court denied MDC's motion to dismiss, concluding that the invoices attached to the Complaint "sufficiently contain the express written terms and provide the specific services MDC was

---

[5] MDC argues that Verdini is attempting to impermissibly amend his Complaint with new allegations based on the laboratory fees. MDC further asserts that it refunded or waived all laboratory fees for courses that were not held in person. In support, MDC attached the Declaration of Mercedes Amaya, Associate Vice Provost of Student Financial Services. However, this Declaration is the beyond the scope of our review. See Lewis v. Barnett Bank of S. Florida, N.A., 604 So. 2d 937, 938 (Fla. 3d DCA 1992) ("The law is well settled that a motion to dismiss a complaint is not a motion for summary judgment in which the court may rely on facts adduced in depositions, affidavits, or other proofs.").

contractually obligated to provide in exchange for Plaintiff[']s payment of 'fees' to survive a motion to dismiss." (citing Waite Dev., Inc. v. City of Milton, 866 So. 2d 153, 155 (Fla. 1st DCA 2004) ("Several writings may constitute a valid and binding written contract when they evidence a complete meeting of the minds of the parties and an agreement upon the terms and conditions of the contract.")). MDC timely appealed.[6]

---

[6] The parties have filed numerous notices of supplemental authority involving similar lawsuits against institutions of higher learning across the state. We note that these cases all involve different factual allegations than the case now before us. See Order Denying Motion to Dismiss, Moore v. The Univ. of S. Fla. Bd. of Tr., No. 21-CA-002445 (Fla. 13th Cir. Ct. July 29, 2021); Order Dismissing Complaint, LaFleur v. State Univ. Sys. of Fla., 8:20-CV-1665-KKM-AAS, 2021 WL 3725243 (M.D. Fla. Aug. 23, 2021); Order Partially Granting and Denying Motion to Dismiss, Rojas v. The Univ. of Fla. Bd. of Trs., Case No. 01-2021-CA-1124 (Fla. 8th Cir. Ct. Oct. 15, 2021); Order Partially Granting and Denying Motion to Dismiss, Fisher v. Polk State Coll. Dist. Bd. of Trs., Case No. 2021-CA000922 (Fla. 10th Cir. Ct. Oct. 26, 2021); Order Denying Motion to Stay Discovery, Rivadeneira v. Univ. of S. Fla., 8:21-CV-1925-CEH-AAS, (M.D. Fla. Oct. 21, 2021), federal claims dismissed and state claims remanded, 2022 WL 445661 (M.D. Fla. Feb. 14, 2022); Order Denying Petition for Writ of Certiorari, Florida Int'l Univ. Bd. of Trs. v. Alexandre, Case No. 3D21-1841 (Fla. 3d DCA Dec. 6, 2021); Order Granting Motion to Dismiss, Heine v. Fla. Atlantic Univ. Bd. of Trs., Case No. 50-2021-CA-004008-XXXX-MB (Fla. 15th Cir. Ct. Dec. 3, 2021); Order Denying Motion to Dismiss, Alexandre v. Fla. Int'l Univ Bd. of Trs., Case No. 2021-009869-CA-01 (Fla. 11th Cir. Ct. Dec. 30, 2021); Order Granting Motion to Dismiss, Goldstein v. Univ. of Cent. Fla. Bd. of Trs., Case No. 2021-CA-2831-O (Fla. 9th Cir. Ct. Dec. 29, 2021); Order Granting Motion to Dismiss, Levine v. Dist. Bd. of Trs. of Santa Fe Coll., Fla., Case No. 2021-CA-1012 (Fla. 8th Cir. Ct. Feb. 1, 2022); Order Granting Motion to Dismiss, Wilson v. Univ. of Cent. Fla. Bd. of Trs., Case No. 2020-CA-8194-O (Fla. 9th Cir. Ct. Jan. 31, 2022); Order Granting Motion to Dismiss, Burke v. Dist. Bd. of Trs. of Santa Fe Coll., Fla., Case No. 2021-CA-903 (Fla. 8th Cir. Ct. March

6

## II.    ANALYSIS

We review the trial court's determination regarding sovereign immunity, a question of law, de novo.  City of Miami Firefighters' & Police Officers' Ret. Tr. & Plan v. Castro, 279 So. 3d 803, 806 n.11 (Fla. 3d DCA 2019); Desantis v. Geffin, 284 So. 3d 599, 602 (Fla. 1st DCA 2019).  The issue of sovereign immunity may properly be considered on a motion to dismiss.  Charity v. Bd. of Regents of the Div. of Univs. of the Fla. Dept. of Educ., 698 So. 2d 907, 907 (Fla. 1st DCA 1997).

In reviewing an order on a motion to dismiss, we apply the "four corners rule."  Under this rule, "review for the sufficiency of a complaint to state a cause of action is limited solely to the complaint at issue and its attachments."  Santiago v. Mauna Loa Invs., LLC, 189 So. 3d 752, 756 (Fla. 2016).  Therefore, we review the Complaint and its attachments to determine whether Verdini has sufficiently alleged breach of an express, written agreement, which is necessary to overcome sovereign immunity.

---

7, 2022); Order Granting Motion to Dismiss, Stready v. Fla. Agric. & Mech. Univ. Bd. of Trs., Case No. 2021-CA-1164 (Fla. 2d Cir. Ct. March 8, 2022). MDC also filed a notice of supplemental authority citing section 768.39, Florida Statutes (2021), which provides educational institutions with liability protections against lawsuits seeking tuition or fee reimbursements related to the COVID-19 pandemic.  Neither party relies on this statute, and we need not consider its application in this case.

There is no dispute that MDC, a member of the Florida College System, is protected by sovereign immunity. "In Florida, sovereign immunity is the rule, rather than the exception . . . ." Pan-Am Tobacco Corp. v. Dep't of Corr., 471 So. 2d 4, 5 (Fla. 1984). "There are no statutory provisions for sovereign immunity, or its waiver, with regard to contracts. That issue has fallen instead to the courts to address." City of Fort Lauderdale v. Israel, 178 So. 3d 444, 446 (Fla. 4th DCA 2015). It is firmly established that a sovereign may be sued in contract only when there is an express, written contract. Castro, 279 So. 3d at 806.

Verdini argues he has sufficiently alleged that MDC breached an express, written contract to provide on-campus services in exchange for certain mandatory fees. We need not decide whether Verdini has alleged an express contractual relationship to provide some services because this alone is not sufficient to survive MDC's motion to dismiss. This is because Verdini's breach claim is not based on MDC's complete failure to provide services; it is premised on MDC's failure to provide *on-campus* or *in-person* services. So, the issue here is whether Verdini has sufficiently identified an express, written contract to provide *on-campus or in-person services*.

Verdini's Complaint specifically mentions five mandatory fees. The first four fees—student services, financial aid, capital improvement, and

8

technology—are student fees authorized pursuant to separate subsections within section 1009.23, Florida Statutes (2021). The fifth fee listed in the Complaint, parking, is a user fee authorized by section 1009.23(12)(a). Verdini also contends he is suing for a refund of laboratory fees, which are likewise user fees authorized by section 1009.23(12)(a). We address the student fees and the user fees in turn. And although Verdini maintains that his Complaint sufficiently alleges an express, written contract to provide on-campus services, we also consider Verdini's contention that discovery is needed to identify other potential documents evidencing an express contract.

## A. Student Fees

As an initial matter, there is nothing in the Complaint or the attachments that expressly requires MDC to provide on-campus services in exchange for the student services, financial aid, capital improvement, and technology fees. Moreover, Verdini has not identified anything that expressly prohibits MDC from providing remote services in exchange for these fees.

Verdini argues that the attached invoices incorporate the conditions imposed by section 1009.23. Even assuming for the sake of argument this is true, Verdini fails to identify the conditions in section 1009.23 that require on-campus or in-person services. The relevant portions of the provisions are as follows:

9

- Activity and Service Fee (§ 1009.23(7)): "The student activity and service fees shall be paid into a student activity and service fund at the [college] . . . and shall be expended for lawful purposes to benefit the student body in general. These purposes include, but are not limited to, student publications and grants to duly recognized student organizations . . . ."

- Financial Aid Fee (§ 1009.23(8)(c)): "Up to 25 percent or $600,000, whichever is greater, . . . may be used to assist students who demonstrate academic merit; [or other categories of students] . . . . A minimum of 75 percent of the balance of these funds for new awards shall be used to provide financial aid based on absolute need, and the remainder of the funds shall be used for academic merit purposes and other purposes approved by the boards of trustees. Such other purposes shall include the payment of child care fees for students with financial need."

- Capital Improvement Fee (§ 1009.23(11)(a)): "Funds collected . . . may be bonded . . . for the purpose of financing or refinancing new construction and equipment, renovation, remodeling of educational facilities, or the acquisition and renovation or remodeling of improved real property for use of education facilities. The fee shall be . . . expended only to acquire improved real property or construct and equip, maintain, improve, or enhance the educational facilities of [the college]."

- Technology Fee (§ 1009.23(10)): "Revenues . . . shall be used to enhance instructional technology resources for students and faculty. . . . Fifty percent of technology fee revenues may be pledged . . . as a dedicated revenue source for the repayment of debt . . . ."

Nothing in these broad provisions requires the student fees at issue to be used only for on-campus or in-person services. Consequently, based on the Complaint, the attachments to the Complaint, and section 1009.23, Verdini has failed to establish an express, written contractual obligation to

10

provide on-campus services in exchange for the Student Services, Financial Aid, Capital Improvement, and Technology fees.[7]

## B. User Fees

Section 1009.23(12)(a) identifies certain user fees, including parking fees and laboratory fees. According to the statute, "[s]uch user fees . . . shall not exceed the cost of the services provided and shall only be charged to persons receiving the service."

With respect to the parking fee, the Complaint concedes that for the Summer 2020 semester, students were not assessed the parking fee and that the fee would be credited to their account if they already paid. Thus, only the parking fee for the Spring 2020 semester is at issue. However, Verdini has failed to identify an express, written contract for this fee because the attached Spring 2020 invoice does not list a parking fee.

---

[7] In Fiore v. Univ. of Tampa, 20-CV-3744 (CS), 2021 WL 4925562, at *17 (S.D.N.Y. Oct. 20, 2021), the Southern District of New York considered whether plaintiffs sufficiently alleged that certain mandatory fees were tied to access to on-campus facilities or in-person activities. Defendant, the University of Tampa, is a private university, so sovereign immunity was not at issue. Based on the allegations in the complaint and the plain language of the fee descriptions, and under the federal motion to dismiss standard, the court concluded that "Plaintiffs have failed to allege with adequate specificity that fees intended to support certain programs were tied to access to on-campus facilities or in-person activities and were not used for such purposes."

This leaves only the following general allegation in the Complaint, which is insufficient to overcome sovereign immunity as there is nothing evidencing an express, written contract:

> 36. MDC has retained the value of monies paid by Plaintiff and the other Class members for fees, while failing to provide the services for which those fees were paid. MDC's refusal to provide any refunds in consideration of its decision to shutter its campuses and move to remote learning violates its express written contractual agreements with Plaintiff and Class members to provide specific benefits, such as on campus parking and student activities, in exchange for certain fee amounts.

Finally, Verdini's response in opposition to MDC's motion to dismiss raised allegations, for the first time, related to laboratory fees. As with the parking fee, a laboratory fee is a user fee that "shall not exceed the cost of the services provided and shall only be charged to persons receiving the service." § 1009.23(12)(a). Although a laboratory fee is listed on the attached Spring 2020 invoice, Verdini's Complaint does not contain any allegations with respect to laboratory fees as a basis for his breach of contract claim. Moreover, Verdini has not moved to amend the Complaint to add any allegations regarding laboratory fees. We are therefore unable to conclude that Verdini has sufficiently alleged breach of an express, written contract with respect to laboratory fees.

**C. Discovery**

12

Verdini's primary argument on appeal is that the Complaint (and attachments), as is, sufficiently alleges the existence of an express, written contract.[8]  However, Verdini also argues there could be additional, unspecified documents evidencing an express contract and that he should therefore be allowed discovery.  We disagree.

Florida Rule of Civil Procedure 1.130 governs the attachment of documents to a complaint:

> **(a) Instruments Attached**. All bonds, notes, bills of exchange, contracts, accounts, or documents on which action may be brought or defense made, or a copy thereof or a copy of the portions thereof material to the pleadings, *must be incorporated in or attached to the pleading*. No documents shall be unnecessarily annexed as exhibits. The pleadings must contain no unnecessary recitals of deeds, documents, contracts, or other instruments.

(Emphasis added).

As clearly set forth in Rule 1.130(a), any documents Verdini relies on to establish an express contract *must* be incorporated or attached to the complaint.  "In the case of a complaint based on a written instrument it does not state a cause of action until the instrument or an adequate portion thereof

---

[8] At oral argument, counsel for Verdini was asked if it was his position that the Complaint, as pled, is sufficient to survive a motion to dismiss, even if discovery fails to uncover any additional documents.  Counsel unequivocally answered that the documents attached to the Complaint were sufficient.

is attached to or incorporated in the pleading in question." Diaz v. Bell MicroProducts-Future Tech, Inc., 43 So. 3d 138, 140 (Fla. 3d DCA 2010) (quoting Safeco Ins. Co. of Am. v. Ware, 401 So. 2d 1129, 1130 (Fla. 4th DCA 1981)).

Verdini relies on Amiker v. Mid-Century Insurance Co., 398 So. 2d 974 (Fla. 1st DCA 1981) in support of his argument that he should be permitted discovery to determine whether there are any additional, unknown and unspecified documents evidencing an express contract. Amiker, however, does not support this broad proposition. The complaint in Amiker alleged that an insurance agent and the Amikers entered into an agreement for automobile insurance. Id. at 974. As further explained in the opinion:

> The complaint set forth the policy number, the policy period, the type of coverage, and the limits of liability. Although a copy of the policy was not attached to the complaint, the Amikers alleged that despite repeated requests, [the insurer] had refused to deliver a copy of the policy to the Amikers. In addition, the complaint alleged that the policy was available to [the insurer] and that when produced by [the insurer] it would be incorporated into the complaint by reference.

Id. at 974-75.

Because the insurance policy was not attached to complaint, the trial court in Amiker granted the insurer's motion to dismiss based on Rule 1.130. Id. at 974. The First District reversed, explaining the purpose of Rule 1.130

14

"is to apprise the defendant of the nature and extent of the cause of action so that the defendant may plead with greater certainty." Id. at 975 (citing Sachse v. Tampa Music Co., 262 So. 2d 17 (Fla.2d DCA 1972)). Because the Amikers had alleged that the insurer was a party to an insurance policy and the policy was in the possession of the insurer, the court held that the Amikers should be allowed discovery. Id. at 976.

In Amiker, the complaint identified the contract at issue in addition to alleging that the contract was in the insurer's possession. Here, by contrast, Verdini has only alleged the *possibility* of unspecified documents evidencing an express, written contract. Verdini has not cited, and research has failed to uncover, any authority supporting the broad proposition that discovery is warranted when a complaint merely alleges the possible existence of an unidentified contract that may or may not be another's possession. Indeed, such a rule would be contrary not only to the plain language of Rule 1.130 but also its recognized purpose of apprising the defendant of the nature and extent of the cause of action.

## III. CONCLUSION

In conclusion, Verdini has failed to identify an express, written contractual obligation to provide on-campus or in-person services in exchange for the various fees listed in the Complaint. Further, the Complaint

does not contain allegations related to laboratory fees.  And finally, Verdini is not entitled to discovery simply for alleging the possible existence of unspecified documents.  We therefore reverse the order denying MDC's motion to dismiss and remand with instructions to dismiss the Complaint.

Reversed and remanded.