THE MARIANNA AND BLOUNTSTOWN RAILROAD COMPANY, A CORPORATION, *Appellant,* v. H. V. MAUND, *Appellee.*

1. Where a bill is filed to recover damages of a permanent nature from a railroad company for trespasses committed in constructing its railway through land without authority, the owner of the land or reversioner or the party having the right of action for such damages is the proper party to sue *for such.*

2. A complainant cannot supply the want of a valid claim at the commencement of the action by the acquisition or accrual of one during the pendency of the action.

3. If a party who has contracted to purchase land is in possession of it under such contract, at the time that unauthorized trespasses are committed upon it, and a deed of the land is subsequently made to him in pursuance of such contract, such deed is evidence of his right to recover damages for the trespasses.

4. Where a bill is filed to recover damages or compensation for the unauthorized appropriation by a railway company of a right-of-way through the lands of complainant, the width of the right-of-way should be described in the bill seeking compensation therefor and in the decree awarding it.

This case was decided by Division B.

Appealed from the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the court.

*C. L. Wilson* and *Paul Carter,* for Appellant;

*Smith & Davis,* for Appellee.

HOCKER, J.—On the 24th of March, 1910, appellee filed his bill against appellant in the Circuit Court of Jackson County, alleging in substance that he was then the owner in fee simple of certain lands situate in Jackson County, which lands were of great value to complainant for various purposes, especially for farming and stock raising; that about the .......... day of ................................, 1909, the defendant company, a corporation, unlawfully and wrongfully entered upon said land "then owned and in possession of complainant," wrongfully building and constructing its right of way and railway tracks upon and across said lands, and has continued to use its right of way and railroad tracks without complainant's consent; that defendant corporation has never compensated complainant for taking said land, although it has remained in the continued use thereof, and has greatly depreciated the value of said lands by cutting off a part of said lands between the right of way and the Chipola River; that complainant is entitled to compensation to the amount of $3,000.00, and claims a lien thereon together with the improvements upon the same for said amount. The bill prays that a full answer may be required, that the court will adjudge and decree the amount of compensation for the taking of the property as alleged, and that such amount may be decreed to be a lien upon the land so taken with the improvements thereon; that defendant be directed to pay the same by a short day, and in default of payment that defendant and all persons claiming by or through or under it be forever foreclosed and barred of all right and equity of redemption of, in and to the said lands; that a master be appointed, etc. The bill contains also a prayer for general relief.

A demurrer was filed to this bill and overruled. The defendant answered in substance, neither admitting nor

denying the ownership of the lands by the complainant and demanding proof of this fact; denying that its railway has depreciated the value of complainant's lands, that its right of way and track takes up a good portion of his lands, and that its cuts up and divides the land so as to make it less salable, and alleges that the land crossed by its line of railway along the bank of the Chipola River is of small value and useless for agricultural purposes. The answer admits it has not paid complainant any compensation for said land, and that he is entitled to some compensation for the right of way if he owns the land, but denies it is worth $3,000.00, and alleges that $250.00 would be reasonable compensation.

It seems that this cause was brought to issue on this original bill and the answer thereto; that quite a large amount of testimony was taken, and that because it appeared the complainant did not have the legal title to the land in controversy at the time he filed his original bill, on the 13th of February, 1911, he moved the court to be allowed to file an amended bill which would meet the facts. In this amended bill he alleged substantially that on the .......... day of ............................., 1908, he took a lease in writing of the lands in question with an option of buying them; that subsequently he made valuable improvements on the land with the view of buying them; that on November 1st, 1909, he did buy said lands, receiving a bond for title from the owner, the Milton Land & Investment Company; that thereafter on October 10th, 1910, in accordance with said bond for title the Milton Land & Investment Company made a deed to complainant conveying said lands, and that he thus is the owner in fee simple of said lands, but was indebted to said Milton Land & Investment Company for the balance due said company to secure which he agreed and promised to execute a mortgage on

said lands, which mortgage he had executed, though his wife had not signed it.

The bill then alleges that on the ............ day of ...................., 1909, the defendant Railroad Company wrongfully entered upon said lands then owned by complainant's grantor, but in complainant's possession, under the written contract for the purchase thereof, and wrongfully built its tracks and erected its right of way across said lands, which said defendant company has since continued to use, without making any compensation to complainant.

The bill alleges that the acts of defendant company had depreciated the market value of said lands, taking up a good portion thereof and cutting up and dividing it so as to make it unsalable, especially the part between the Chipola River and the railroad tracks and right of way. The bill then alleges that on January 5th, 1911, the Milton Land & Investment Company, by an instrument in writing, released, transferred and assigned to complainant any cause of action or right of action it may have had, or then had, against defendant company for the use of the right of way aforesaid through said lands, and for any damages it may have suffered by reason of such use The bill alleges that defendant has never paid complainant for the use of said lands, and is in possession without complainant's authority, or that of his grantor. It alleges that complainant is entitled to compensation in the sum of $3,000.00, and claims a lien therefor on said lands and improvements. The prayer of the bill is substantially the same as in the original bill.

The defendant demurred to this amended bill because it was indefinite and vague, not stating a cause of action, that the cause of action is therein based on the deed of January 11th, 1911, made long after the suit was brought, and other grounds. This demurrer was overruled with

leave to defendant company to answer. The defendant company answered, among other things, that complainant did not own the real estate described in the amended bill at the time that suit was brought, and then had no right of action against defendant, and alleges that he purchased said lands after the completion of defendant's railroad across said lands. The answer admits building its railroad from Marianna, in Jackson county, to Blountstown, in Calhoun county, during the years 1909 and 1910, and believes it crosses some of the lands complainant now claims; that it is now using the right of way and railroad tracks; denies depreciation of the value of the lands, alleges that where the railroad passes through the lands claimed by complainant the land between the railroad and the river is not used for farming purposes, is wild and swampy and of little value. The answer then alleges the facts set up in the demurrer as to complainant's ownership; that he is not entitled to compensation, and was not the owner until long after the suit was brought. No exception was filed to this answer, and no proof was made as to the time when the railroad was built across the lands claimed by complainant.

A final hearing was had by agreement of the parties on the amended bill, answer, replication and testimony submitted by the respective parties. A decree was made on April 7th, 1911, for $1,250.00, as compensation or damages, and giving a lien therefor "upon the land taken by defendant," and decreeing that complainant was entitled to a foreclosure of such lien and sale of the land taken. The decree directed that the defendant pay the amount awarded, and costs in 20 days, and in default thereof that defendant be barred of all equity of redemption in and to the right of way, and that W. B. Farley be appointed a special master to sell the lands according to law and the

rules of practice in foreclosure cases, etc. An appeal was taken from this decree.

Several questions are presented here. First, that complainant had no cause of action when the suit was brought; second, that the damages were excessive, and third, that the bill stated no cause of action.

It seems that any one in lawful possession of land, and in some cases even a trespasser may recover damages for a trespass that affects his interest in the land. Dicey on Parties to Actions, top page 355, *et seq.* But where a suit for damages is brought to recover damages of a permanent nature to the land the owner of reversioner is the proper person to sue for such damages. "The same act which injures the landlord or reversioner is generally also an interference with the rights of the tenant. When this is so the landlord and tenant have each separate rights of action, and may be entitled to different amounts of damages." Ib. p. 366. In this case it is apparent that complainant is not suing for damages for any interference with his rights as a mere tenant, but for damages of a permanent nature to the land. He should therefore make it plain that he was the owner of the land, or of the right of action at the time the suit was brought.

It is said in 1 Cyc. p. 744, "A plaintiff cannot supply the want of a valid claim at the commencement of the action by the acquisition or accrual of one during the pendency of the action. Nor can plaintiff recover in a pending action on a cause of action which accrued after the institution of such action, even though such cause of action relate to the subject matter of the pending action." See Metcalf v. Guthrie, 94 N. C. 447. It is stated in this case that where the right to sue arises out of a transaction subsequent to the institution of the suit, relief cannot be had by a supplemental or amended complaint for the obvi-

ous reason that the cause of action did not then exist. Says Judge Bleckley in Wadley, Jones & Co. v. Jones, 55 Ga. 329, "it is a rule of law to which there is, perhaps, no exception, either at law or in equity, that to recover at all there must be some cause of action at the commencement of suit." In 15 Cyc. p. 795, it is said: "Damages for the taking of land or for injury to land not taken, belong to the one who owns the land at the time of the taking or injury and they do not pass to a subsequent grantee of the land, except by a provision to that effect in the deed, or by assignment. Frey v. Duluth S. S. & Ry. Co., 91 Wis. 309, 64 N. W. Rep. 1038. Conceding that complainant would have a right of action for the damages sued for, if the trespass complained of were committed by defendant subsequent to complainant's entry upon the land under his contract to purchase made on November 1st, 1909, yet the proof does not show that this was the case. The amended bill alleges that the defendant built its road across the lands in question in 1909 and 1910. There is no express allegation that the road was built after November 1st, 1909, and the fact that it was so built is inferentially denied in the answer which is not excepted to. The complainant then has not clearly shown a right of action accruing to him under this contract. The deed to the plaintiff made October 24th, 1910, several months after this suit was brought could not alone support this action; though if complainant was in possession of the land under his contract to purchase it dated November 1st, 1909. prior to the time the railroad was constructed through it, then this deed would be evidence of his right to recover the permanent damages to the land. So it is obvious he has not clearly shown a right of action when the suit was brought on the 24th of March, 1910, under the assignment of the right to sue executed on January 5th, 1911. That

assignment gave a new right of action long subsequent to the date of the bringing of the suit. It is decided in this State that in ejectment a plaintiff cannot recover upon a deed made after the suit is brought. Paul v. Fries, 18 Fla. 573; Carn v. Haisley, 22 Fla. 317. We know of no reason why the same principle should not apply to a case like the instant one.

It is asserted in the appellee's brief that this suit is based on the case of Florida Southern R. Co. v. Hill, 40 Fla. 1, 23 South. Rep. 566. This case simply recognizes the right of the owner of land through which a railroad has been permitted to lay its track, to recover his damages in an equitable proceeding.

It appears that neither of the bills, nor does the decree, describe the property taken by the railroad, or decreed to be subject to the lien, and subject to foreclosure, with any certainty; no width of the right of way is given or described, and we know of no statute that fixes with certainty the width of a right of way. The fourth paragraph of Section 2803, General Statutes of 1906, gives a railroad or canal the right to lay out its road or canal "not exceeding two hundred feet in width." That is the maximum width, but not necessarily the exact width, for it may be less. As a matter of fact the decree describes no property in such fashion that it could be definitely ascertained by a surveyor. If the railroad company is to pay compensation for a right of way, then it should be accurately described, and it and every one else should be informed of its width.

The decree appealed from is reversed at the cost of the appellee, with directions to dismiss the bill without prejudice.

35—Vol. 62

TAYLOR and PARKHILL, J. J., concur;

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.